# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

CLERK, U. S. DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
FILED 5/20/2011
BY DEPUTY              CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| v. | §    CRIMINAL NO. H-10-644 |
| | § |
| SHANE EVERETT DALLMEYER | § |
| Defendant. | § |

## PLEA AGREEMENT

The United States of America, by and through JOSE ANGEL MORENO, United States Attorney for the Southern District of Texas and Jay Hileman, Assistant United States Attorney, David N. Karpel, Trial Attorney, Gang Unit, United States Department of Justice, and the defendant, Shane Everett Dallmeyer, and the defendant's counsel, Zachary Brown Fertitta, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### The Defendant's Agreement

*ZBF.*
*Superceeding Indictment*

1.    The defendant agrees to plead guilty to Count Two of the Indictment. Count Two charges defendant with Violent Crime in Aid of Racketeering Activity in violation of Title 18, United States Code, Section 1959(a)(3). The defendant, by entering this plea agrees that he/she is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a

1

reasonable doubt.

## Punishment Range

2.     The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 1959(a)(3), is imprisonment for a term of not more than twenty (20) years and/or a fine of not more than $250,000.  Additionally, the defendant may receive a term of supervised release after imprisonment of up to three(3) years. Title 18, U.S.C. §§ 3559(a)(1) and 3583(b)(1).  Defendant  acknowledges and understands that if he/she should violate the conditions of any period of supervised release which may be imposed as part of his/her sentence, then defendant may be imprisoned for up to two (2) years,  without credit for time already served on the term of supervised release prior to such violation.  Title 18, U.S.C. §§ 3559(a)(3) and 3583(e)(3).  Defendant understands that he/she cannot have the imposition or execution of the sentence suspended, nor is he/she eligible for parole.

## Mandatory Special Assessment

3.     Pursuant to Title 18, U.S.C. § 3013(a)(2)(A), immediately after sentencing, defendant will pay to the Clerk of the United States District Court  a special assessment in the amount of one hundred dollars ($100.00) per count of conviction.  The payment will be by cashier's check or money order  payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010,  Houston, Texas  77208, Attention: Finance.

## Fine and Reimbursement

4.     Defendant understands that under the Sentencing Guidelines, the Court is

permitted to order the defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release; if any is ordered.

5.    Defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately, and defendant will not attempt to avoid or delay payment.

6.    Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) prior to sentencing if he/she is requested to do so. In the event that the Court imposes a fine or orders the payment of restitution as part of the Defendant's sentence, the Defendant shall make complete financial disclosure by truthfully executing a sworn financial statement immediately following his/her sentencing.

### Waiver of Appeal

7.    Defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant agrees to waive the right to appeal the sentence imposed or the manner in which it was determined on any grounds set forth in Title 18 U.S.C. § 3742. Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding, including but not limited to Title 28, U.S.C. §§ 1651, 2241 and 2255.

The defendant further waives any rights under Title 28, U.S.C., § 2241 to challenge the manner in which the sentence is executed or the legality of the defendant's detention. In

3

exchange for the Agreement with the United States, Defendant waives all defenses based on venue, speedy trial under the Constitution and Speedy Trial Act, and the statute of limitations with respect to any prosecution that is not time barred on the date that this Agreement is signed, in the event that (a) Defendant's conviction is later vacated for any reason, (b) Defendant violates any provision of this Agreement, or (c) Defendant's plea is later withdrawn.

8.      In agreeing to these waivers, defendant is aware that a sentence has not yet been determined by the Court. The defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction, not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive.  Defendant further understands and agrees that the United States Sentencing Guidelines(USSG) are "effectively advisory" to the Court. *United States v. Booker*, 125 S.Ct. 738 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9.      The Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this

4

plea agreement.

## The United States' Agreements

10.     The United States agrees to each of the following:

(a)     At the time of sentencing, the United States agrees not to oppose defendant's anticipated request to the Court and the United States Probation Office that he/she receive a two (2) level downward adjustment pursuant to U.S.S.G. Section 3E1.1(a) should the defendant accept responsibility as contemplated by the Sentencing Guidelines;

(b)     If the defendant qualifies for an adjustment under U.S.S.G. Section 3E1.1(a), the United States agrees not to oppose the defendant's request for an additional one level departure based on the timeliness of the plea or the expeditious manner in which the defendant provided complete information regarding his/her role in the offense if the defendant's offense level is 16 or greater.

(c)     The United States agrees not to request an upward departure.

(d)     The United States agrees to dismiss the remaining counts of the indictment at sentencing.

## United States' Non-Waiver of Appeal

11.     The United States reserves the right to carry out its responsibilities under

guidelines sentencing.  Specifically, the United States reserves the right:

(a)     to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with defendant's counsel and the Probation Office; and,

(d)     to file a pleading relating to these issues, in accordance with U.S.S.G. Section

6A1.2 and Title 18, U.S.C. § 3553(a).

## Sentence Determination

12.    Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, U.S.C. § 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge.   If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

13.    Defendant represents to the Court that he/she is satisfied that his/her attorney has rendered effective assistance. Defendant understands that by entering into this agreement, he/she surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

6

(a)     If defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if the defendant, the United States, and the court all agree.

(b)     At a trial, the United States would be required to present witnesses and other evidence against the defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them. In turn, the defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf. If the witnesses for defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the court.

(c)     At a trial, defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if the defendant desired to do so, he/she could testify on his/her own behalf.

### Factual Basis for Guilty Plea

14.     Defendant is pleading guilty because he/she is guilty of the charge contained in Count Two of the indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish the Defendant's guilt:

### BACKGROUND

The ABT is a race-based Texas state-wide organization operating inside and outside of state and federal prisons throughout the State of Texas and the United States. The ABT was established in the early 1980's within the Texas Department of Criminal Justice (TDCJ). The ABT modeled itself after and adopted many of the precepts and writings of the Aryan Brotherhood, a California-

based prison gang that was formed in the California prison system during the 1960's. The ABT offers protection to "white" inmates if they join the criminal enterprise. Membership in the ABT is for life. They adhere to the motto that "God Forgives, Brothers Don't" (GFBD). The ABT promotes "whites" as the superior race.

The ABT has a written charter and by-laws ("Constitution"). The Constitution lists the duties and responsibilities of the organization and membership and is considered the foundation of the organization.

In the past, the ABT was primarily concerned with the protection of white inmates and white supremacy/separatism. Over time the ABT has expanded its focus more towards a criminal enterprise to include illegal activities for profit. In some cases, the ABT has made alliances with prison gangs of other ethnicities to aid in unlawful activities for profit. However, most members of the ABT live the philosophy of "14/88." "14" represents the "Fourteen Words" that form the basis of their belief, which are: "We must secure the existence of our people and a future for white children." The "8" represents the eighth letter of the alphabet (H), which when appearing twice – "88" or HH – signifies "Heil Hitler," a reference to Adolf Hitler.

Once released from incarceration, ABT members/prospects/associates continue to engage in criminal activity on behalf of the enterprise. Members are required to remain loyal to the ABT and to work to further the goals of the ABT through criminal activity. One of the goals of the ABT is to recruit new members. ABT members take a "blood in" oath. This means members have to draw blood on behalf of the ABT, which according to the Constitution results in a lifetime commitment. Members are required to sign a "Blind Faith Commitment," in which they agree to do anything directed or requested by their superiors without question. Failure to comply may result

8

in severe beatings, known as beat-downs, or death. These violent acts are carried out primarily by other ABT members and sometimes by their prospects and associates.

The ABT enforces its rules and promotes discipline among its members/prospects/associates through murder, attempted murder, conspiracy to murder, assault, robbery and threats against those who violate the rules or pose a threat to the enterprise. The ABT also uses murder and the threat of murder to maintain a position of power inside and outside of prison. Maintaining power and avoiding loss of stature motivates the ABT to commit violent acts against individuals believed to be disrespectful toward the ABT. Those members/prospects/associates who do not follow the orders of the ABT are also subject to murder, as is anyone who uses violence against an ABT member/prospect/associate. ABT members/prospects/associates who cooperate with law enforcement authorities are also subject to murder.

ABT members are recruited from both inside and outside of prison. In order to be considered for ABT membership, a person must be sponsored by another ABT member. Once sponsored, a prospective member must serve an unspecified term, wherein he is referred to as a prospect, while his conduct is observed by the members of the ABT. During this period, the prospect studies and learns the ABT Constitution and the "prospect schooling guide." While a prospect, the individual is considered part of the ABT family and entitled to the full protection of the enterprise. The prospect is also subject to the rules and orders of the enterprise. If the prospect's conduct during the probationary period is deemed satisfactory he is admitted by a vote of the majority of all ABT members present.

ABT members often use the term "Church" when referring to gang meetings. The conducting of criminal activity by ABT members is often discussed at "Church." These meetings are generally

9

held in locations where secrecy can be maintained.

In addition to members, the enterprise includes those closely affiliated with the ABT, who are called "associates." While females are not allowed to become members of the ABT, those who associate with the ABT and engage in criminal activity for the benefit of the ABT are often referred to as "featherwoods." Associates who do not fulfill their obligations to the ABT are sometimes subject to violence, including murder.

Members, and oftentimes associates, are required to follow the orders of higher-ranking members, often referred to as a "direct order" or "D.O." In particular, members are required, when ordered, to kill or assault without hesitation. Members and associates who do not fulfill their obligations to the ABT are themselves subject to violent acts, to include murder or assault.

In Texas there are two competing ABT factions. Each faction follows the leadership of their respective faction. Each faction has similar chain of command structures and has a defined militaristic ranking structure. ABT members refer to the gang as the "Family." The hierarchy of each faction is broken up into separate TDCJ regions. There are five TDCJ regions. Each region has the following chain of command: general, major, captain, lieutenant, sergeant-at-arms, and soldier. The ranking structure remains constant; however, there are frequent personnel changes (promotions, demotions, terminations) within the rank structure. Each faction of the ABT is governed by a five person "Steering Committee" (Wheel). Each Wheel member (who holds the rank of General) is responsible for one of five separate regions within the State of Texas. Each Wheel member is responsible for appointing his subordinate, ranking member (Majors) within his respective region. Each Wheel member also appoints an inside Major (in-custody member) and an outside Major (referred to as someone in the "free world") in his respective region. These Majors, in turn, are

10

responsible for appointing their subordinate Captains and Lieutenants who, in turn, appoint their sergeants. Wheel members typically remain in place regardless of custody status unlike other ranking members who typically lose rank when their custody status changes.

The purpose of the enterprise include the following:

a.    Preserving and protecting power, territory, and profits through the use of intimidation, violence, threats of violence, assaults, robbery, and murder;

b.    Promoting and enhancing members'/prospects'/associates' activities;

c.    Keeping non-members and its members/prospects/associates in fear of the enterprise through threats of violence and actual violence.

d.    Enriching the members/prospects/associates of the ABT through robberies, counterfeiting, and drug trafficking.

The means and methods by which the members/prospects/associates conduct and participate in the affairs of the ABT criminal enterprise include the following:

a.    ABT members/prospects/associates commit, and attempt and threaten to commit, acts of violence, including assault and murder, to protect and expand their criminal operations and to maintain their status.

b.    ABT members promote a climate of fear through violence and threats of violence.

c.    The ABT rules dictate that an attack against a member will be considered an attack on the enterprise as a whole. All ABT members are required to counter any such attack.

d.    ABT members promulgate rules as documented in their Constitution to be followed by all participants, including the rule that any ABT member assisting law enforcement authorities must be killed.

e.    To enforce the rules and promote discipline, ABT members murder, attempt to murder, assault, and threaten those participants in the enterprise who violate rules or orders, or who pose a threat to the enterprise.

f.    To generate income, ABT members engage in illegal activities under the protection of the enterprise, including narcotics trafficking, fraud, counterfeiting, trafficking in

11

firearms, and other illegal activities.

g.    For protection and armed combat, ABT members acquire, carry and use firearms.

h.    To perpetuate the enterprise, ABT members attempt to conceal from law enforcement the existence of the ABT, the identity of its participants, and the way in which it conducts its affairs.

I.    To keep secret their activities, ABT members communicate using codes and hidden messages, and use a network of hubs to relay messages among members/prospects/associates.

The above-described enterprise, Aryan Brotherhood of Texas, through its members, prospects, and associates, engaged in racketeering activity as defined in 18 U.S.C. § 1959(b)(1) and 1961(1), namely acts involving aggravated assault, in violation of Texas Penal Code § 22.02, and narcotics trafficking in violation of 21 U.S.C. §§ 841(a)(1) and 846. Gang members purchased methamphetamine from contacts in Mexico, transported the drugs into the state of Texas, and sold them to associates in the Houston, Texas area.

## FACTS OF THE OFFENSE

The defendant **Shane Everett Dallmeyer** is a member of the ABT. On September 22, 2008 a church meeting was held at Stephen Walter Cooke's property in Tomball, Texas and a prospect referred to as "Tripp" attended the meeting. Cooke ordered the gang members to severely assault Tripp to remove his association from ABT. This order was relayed from Cooke through other officers of ABT to the other members of the gang, who then physically assaulted Tripp. This assault was carried out by at least 11 other gang members. The members assaulted Tripp by beating him with their fists, and kicking and stomping him with their feet in the yard of the Cooke residence. After Tripp was severely beaten he was loaded into a vehicle and taken to a rural area and dumped.

12

As a result of the assault Tripp sustained serious bodily injury including an orbital floor blowout and fracture to his left eye socket which caused a loss of vision in the eye for an extended period of time. The defendant **Damllmeyer** participated in this assault by punching Tripp with his fist and did so in order to maintain or increase his position in the enterprise, the Aryan Brotherhood of Texas.

## Breach of Plea Agreement

15.     If defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and the defendant's plea and sentence will stand. If at any time defendant retains, conceals or disposes of assets in violation of this plea agreement, or if defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

16.     Whether the defendant has breached any provision of this plea agreement shall be determined solely by the United States through the United States Attorney's Office, whose judgment in that regard is final.

## Complete Agreement

17.     This written plea agreement, including the attached addendum of defendant and

his/her attorney, constitutes the complete plea agreement between the United States, defendant and his/her counsel.  No promises or representations have been made by the United States except as set forth in writing in this plea agreement.  Defendant acknowledges that no threats have been made against him/her and that he/she is pleading guilty freely and voluntarily because he/she is guilty.

18.    Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on _____May 20_____, 2011.

_____Shane Dallmeyer_____
SHANE EVERETT DALLMEYER
Defendant


Subscribed and sworn to before me on _____May 20_____, 2011.

DAVID BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

14

APPROVED:

      JOSE ANGEL MORENO
      UNITED STATES ATTORNEY

By:

Jay Hileman
Assistant United States Attorney
Southern District of Texas
Telephone: (713) 567-9391
Facsimile: (713) 718-3301

Zachary Brown Fertitta
Attorney for Defendant
(713)337-1180

David N. Karpel – by permission
David N. Karpel
Trial Attorney
Gang Unit
U.S. Department of Justice
(202)307-5715

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | |
| | § | **CRIMINAL NO. H-10-644** |
| **SHANE EVERETT DALLMEYER** | § | |
| **Defendant.** | § | |

## PLEA AGREEMENT  - ADDENDUM

I have fully explained to defendant his/her rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant.   To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____          5/20/2011
ZACHARY BROWN FERTITTA                    Date
Attorney for Defendant

16

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me.   My attorney has fully explained and I  understand all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case.  I have read and carefully reviewed every part of this plea agreement  with my attorney.  I understand this agreement and I voluntarily agree to its terms.

_____
SHANE EVERETT DALLMEYER
Defendant

_____5/20/2011_____
Date

17